IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHEILA A. CAMPBELL                    )
            Plaintiff,                )
                                      )
            v.                        )   Civil Action No. 07-0245
                                      )
FYDA FREIGHTLINER PITTSBURGH, INC.,   )
            Defendant.                )

### MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.                         August *12*, 2008

        This is an employment discrimination case. Plaintiff,
Sheila Campbell, alleges that defendant[1], FYDA Freightliner
Pittsburgh, Inc., ("FYDA") discriminated against her on the basis
of her age and her sex in violation of the Age Discrimination in
Employment Act, 29 U.S.C. § 621, et seq., ("ADEA"), Title VII of
the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the
Pennsylvania Human Relations Act[2], 43 P.S. § 951 ("PHRA").
Plaintiff seeks damages, costs, and fees.

        Defendant has filed a motion for summary judgment
arguing that plaintiff cannot establish a prima facie case of
discrimination, nor, even if she could, produce any evidence of

---

        [1]   Plaintiff voluntarily dismissed her claims against
individual defendants Paul Naman and Greg Rice [Doc. No. 24].

        [2]   Claims under the PHRA are interpreted in accordance
with its federal counterparts including the ADEA and Title VII.
Kautz v. Met-Pro Corp., 412 F.3d 463, 466 (3d Cir. 2005); Kelly
v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996).

pretext.  For the reasons set forth below, defendant's motion for summary judgment will be granted.

## I.    PROCEDURAL BACKGROUND

As an initial matter, the court must address some procedural irregularity related to the filing of the instant motion.  In originally filing its motion for summary judgment on April 2, 2008, FYDA failed to comply with Local Rule of Civil Procedure 56.1(B)(1) which requires that a party moving for summary judgment separately file a concise statement of material facts.  [See Doc. Nos. 20-22].  Plaintiff raised this procedural deficiency when she filed a responsive concise statement of material facts in accordance with Local Rule of Civil Procedure 56.1(C)(1) [Doc. No. 29].  Realizing it failed to comply with the local rule, FYDA filed a reply brief and concise statement of material facts in support of its motion for summary judgment on June 17, 2008 [Doc. Nos. 32, 33].  Notably, FYDA did not seek leave of court to file either its reply brief or its belated concise statement of material facts.

On July 1, 2008, plaintiff then moved to strike defendant's motion for summary judgment or, in the alternative, for an order granting plaintiff thirty (30) days to respond to defendant's un-ordered reply brief and untimely concise statement of material facts [Doc. No. 34].  Because the reply brief and

concise statement of material facts raised additional facts and legal argument, the court granted plaintiff's motion in part. [See July 2, 2008 Order at Doc. No. 36]. The court ordered plaintiff to respond to defendant's reply and concise statement of material facts within thirty (30) days [Doc. No. 35]. Plaintiff requested and received a short extension of time, and filed her response on August 7, 2008.[3]

Thus, in resolving defendant's motion for summary judgment, the court has considered defendant's original motion and brief in support [Doc. Nos. 20-22] as well as its un-ordered reply and untimely concise statement of facts [Doc. Nos. 32 and 33]. The court has also considered plaintiff's opposition to defendant's motion [Doc. Nos. 28 and 29] as well as her response/sur-reply to defendant's belated concise statement of material facts and reply brief [Doc. Nos. 42 and 43].

---

[3] The court granted plaintiff an extension of time to file the response/sur-reply by August 6, 2008. However, plaintiff filed the response at 12:08 a.m. on August 7, 2008. On August 8, 2008, defendant filed a motion to strike plaintiff's response as untimely [Doc. No. 44]. Considering the circumstances surrounding the filing of the motion for summary judgment and defendant's procedural failures, we find the "untimeliness" of plaintiff's response to be inconsequential. Defendant's motion to strike [Doc. No. 44] will be denied.

3

## II.  FACTUAL BACKGROUND

Unless otherwise noted, the following facts are not in dispute.  We construe all other facts in the light most favorable to plaintiff, the non-moving party.  Other material facts may be discussed in context throughout this opinion.

FYDA is a business which provides sales, parts, and service to the trucking industry.  Sheila Campbell began working for FYDA in 1998 as a salesperson.  Initially, Campbell was responsible for the dump truck business line at FYDA.  Later, Campbell took a position in the service department.  During her employment with FYDA, Campbell was promoted, given pay raises, and offered additional promotions.  Greg Rice was Campbell's supervisor in the service department.  Paul Naman is FYDA's General Manager.

In July of 2003, FYDA terminated Campbell after an incident between Campbell and Rice.  According to FYDA and Rice, Campbell "verbally attacked" Rice, her supervisor, and FYDA's business operations, near a customer and other FYDA employees, including parts counter personnel, service counter personnel, technicians and/or warranty personnel.  Rice contends that the incident began soon after he entered the premises and came around the corner of the shop area.  Rice testified that although he suggested that they proceed to his office or another area to discuss the matter, Campbell continued to verbally attack Rice and

4

the situation "escalated." FYDA contends that Campbell was yelling, cursing, and using profane language. Paul Naman became aware of the incident and met with both Campbell and Rice shortly thereafter. After this meeting, Campbell was sent home and placed on paid leave.

Campbell provides a somewhat different account of what she describes as a "disagreement" and/or "discussion" with Rice. According to Campbell, Rice failed to follow certain protocol regarding a repair and parts order that he handled the previous day. As a result, Campbell asserts that she could not provide satisfactory customer service when the high-volume customer called regarding that order. When Rice reported for work, Campbell contends that she asked to discuss the matter with Rice in his office. According to Campbell, she and Rice were the only people present in the office during the discussion.

Campbell admits being frustrated and using an expletive regarding company protocol but she denies ever specifically cursing at Rice. Although she disputes that she was yelling, Campbell admits that she may have been "talking loudly." Campbell maintains that the entire incident took place "behind closed doors," in Rice's office, and specifically denies that the incident occurred in front of customers or other FYDA employees. Campbell, however, does not dispute that she and Rice went to see Naman after the

5

incident and that Naman instructed her to go home to "cool off."

Although Campbell contends that there were no witnesses to this "disagreement," Naman testified that he conducted an investigation and received written statements from several FYDA employees regarding what transpired between Campbell and Rice. According to the statement of Diana Allen, FYDA's Warranty Manager, she was in her office on the phone with a customer when she heard a "loud bang," which she attributed to a slamming door. She also stated that the customer on the phone also heard this and commented about it. After she heard the slamming door, Allen stated the she heard Campbell "screaming at [the] top of her voice at Greg Rice." Allen heard Campbell using vulgar language and that Rice asked Campbell to "calm down and they would talk about it." According to Allen, Campbell's response was "more vulgarity." Allen stated that the "screaming went on for about five to ten minutes." When it "quieted down," Allen immediately left her office and walked to the service department where she saw a customer standing at the counter who looked at her and laughed.

Two other employees, Chris Nestor and Fred Struble III, also provided a joint statement to Naman regarding the incident. According to Nestor and Struble, Campbell received a phone call from a customer who had dealt with Rice the day before regarding parts and repair of a truck. After Campbell finished talking to

6

the customer, she started yelling about "not knowing what was going on" and continued to "complain" in front of a customer in the area. When Rice arrived, Nestor and Struble stated that Campbell started "yelling" at him, "swearing and complaining" about the way things were being run.

After obtaining these employee statements and conducting his investigation, Naman determined that plaintiff had engaged in insubordinate conduct. When Campbell returned to work, after taking approximately two weeks off, she met with Rice and Naman and was fired. During this meeting, Campbell contends that Rice stated "it's either me or you" and that "the guys won't respect me if I let you come back." Rice testified, however, he felt that no employees, male or female, would have respected him if Campbell's conduct was tolerated. According to Naman, Campbell was fired because of her "gross insubordination." Campbell contends that her separation report was changed to reflect that her alleged conduct did not occur "in front" of customers, but rather within "earshot" of customers. She disputes both contentions.

Campbell contends that several male employees had engaged in similar conduct, i.e., cursing, swearing, or using profanity directed at supervisors or near customers, but that FYDA had taken no disciplinary action against them. For example, Campbell contends that she witnessed male employees directing

7

profanity at Rice without consequence. Also, according to Campbell, FYDA transferred a male employee, who was the subject of several customer complaints and who would use profanity, to a different position rather than terminate him. Campbell also alleges that a physical altercation occurred between two male employees, but that FYDA did not fire either male employee for that conduct even though she alleges that it occurred in front of employees and/or customers.

In response to Campbell's contentions regarding FYDA treating male employees more favorably, Rice admitted that he verbally warned an employee who had used profanity within earshot of customers, but noted that he did not supervise that employee. Rice and Naman also stated that profane language is tolerated "in certain settings," specifically in the shop area away from customers and among the service technicians.

With respect to the physical altercation, Rice admitted that the male employees were not terminated for such conduct, but stated that they were warned and written up. Naman also investigated the altercation and found that there were no witnesses, that it occurred in the shop away from other employees and customers, and that it did not involve a supervisor. Further, FYDA contends that during the years prior to Campbell's termination, several male employees were terminated for

8

insubordination and/or using abusive or offensive language directed at a supervisor or customer. Campbell, however, distinguishes these terminations and contends that they involved different or additional conduct.

After her termination, Campbell's job duties were split among various employees. However, FYDA ultimately hired a full-time employee, a female over the age of 40, to replace Campbell.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the

9

material facts, however, will preclude the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. <u>Id</u>. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. <u>Id</u>. at 248-49. Under these standards, the non-moving party must do more than show there is "some metaphysical doubt" as to the material facts. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

Although inferences must be drawn in favor of the non-moving party, "an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." <u>Robertson v. Allied Signal, Inc.</u>, 914 F.2d 360, 382 n.12 (3d Cir. 1990). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. <u>Williams v. Borough of W. Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)); <u>see also Lujan v. National Wildlife Fed.</u>, 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory

10

allegations of the complaint ... with conclusory allegations of an affidavit").

The non-moving party has the burden of producing evidence to establish each element of her claim. Celotex, 477 U.S. at 322-23. The non-movant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which she bears the burden of production. Anderson, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec., 475 U.S. at 587 (citations omitted).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law because no reasonable jury could return a verdict in her favor. It is on this standard that the court has reviewed defendant's motion and plaintiff's response thereto.

### III. DISCUSSION

Campbell contends that FYDA discriminated against her in violation of the ADEA, Title VII, and the PHRA when FYDA

11

terminated her for "gross insubordination." According to Campbell, genuine issues of material fact exist regarding the circumstances surrounding her termination and defendant's purported legitimate non-discriminatory reason for firing her.

FYDA contends that Campbell has failed to establish a prima facie case of discrimination under either the ADEA or Title VII. Further, FYDA argues that even if she could establish a prima facie case of discrimination under either statute, summary judgment is appropriate because she has failed to adduce evidence that the proffered reason for her termination, insubordination, was pretextual. Upon review of the record as a whole, we agree and find that FYDA is entitled to summary judgment.

The ADEA prohibits employers from discriminating against individuals in the hiring, discharge, compensation, term, conditions, or privileges of employment on the basis of their age. See 29 U.S.C. § 623(a)(1). Similarly, Title VII prohibits employment discrimination based on an individual's sex. 42 U.S.C. § 2000e-2(a). Although plaintiff alleges that FYDA's actions violated these separate statutes, as well as the PHRA, the legal standards for determining plaintiff's discrimination claims are the same under the ADEA, Title VII, and the PHRA. Kelly v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996). Thus, the disposition of plaintiff's ADEA and Title VII claims applies with equal force

12

to her PHRA claims.

Here, the parties agree that because plaintiff is attempting to prove her discrimination claims through indirect evidence, which creates an inference of unlawful discrimination, the claims must be analyzed under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework: (1) plaintiff bears the burden of establishing a prima facie case of discrimination; (2) the burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action; (3) if defendant meets its burden of production, plaintiff must prove by a preponderance of the evidence that defendant's proffered reason was a pretext for discrimination. See McDonnell Douglas, 411 U.S. at 802; Tx. Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-55 (1981); see also Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313 (3d Cir. 2000). This burden-shifting analysis applies to both Title VII and the ADEA. See Sarullo v. U.S. Postal Service, 352 F.3d 789, 797 (3d Cir. 2003).

A. Prima Facie Case

The threshold determination of whether plaintiff has established a prima facie case of employment discrimination is a question of law that must be decided by the court and requires a showing that: (1) the plaintiff belongs to a protected class; (2)

13

she was qualified for the position; (3) she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position. Sarullo, 352 F.3d at 797 (citing McDonnell Douglas, 411 U.S. at 802); Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 348 n.1, 352, 356 (3d Cir. 1999). The Supreme Court has noted that a plaintiff's burden of establishing a prima facie case of illegal discrimination is not an onerous one. Burdine, 450 U.S. at 253.

Here, the parties do not dispute that plaintiff satisfies the first three elements of a prima facie case of discrimination. She is a member of the protected classes, i.e., a female over the age of forty. Her qualifications are not in dispute and she suffered an adverse employment decision when she was fired. However, the parties dispute whether there is sufficient evidence of record to raise an inference of unlawful age or sex discrimination. We will examine each claim in turn.

## 1. Age Discrimination

First, with respect to age discrimination, FYDA argues that there are no circumstances that raise an inference of discriminatory action because plaintiff was undisputedly replaced by an employee over the age of forty. FYDA contends that this fact

14

alone undermines plaintiff's <u>prima</u> <u>facie</u> case of age discrimination. However, FYDA also argues that plaintiff has no evidence to raise any inference that her termination was related to her age. Plaintiff argues that FYDA did not terminate younger employees for similar conduct. Further, plaintiff argues that her replacement, although over forty and a member of the protected class, was still "younger" and that age discrimination was a motivating factor in plaintiff's termination.

While plaintiff need not prove that she was replaced by an employee under the age of forty, she must still show that the employer continued to seek out individuals with similar qualifications under circumstances that raise an inference of unlawful discrimination. <u>See</u> <u>Pivirotto</u>, 191 F.3d at 348 n. 1, 352, 356 (finding the fact that one person in the protected class has lost out to another person in the protected class is irrelevant, so long as she has lost out <u>because of [her] age</u>)(emphasis in original and citation omitted). Thus, a <u>prima</u> <u>facie</u> case requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion ... ." <u>Teamsters</u> <u>v. United States</u>, 431 U.S. 324, 358 (1977).

Here, even viewing the evidence of record in light most favorable to Campbell, we find that her "evidence" of age discrimination is not adequate to create an inference that FYDA

15

fired her because of her age. Campbell offers the deposition testimony of Greg Rice that the bulk of his employees were "a younger group for the most part." The relative age of the workforce at FYDA does not, by itself, raise an inference that Campbell's age was a factor in terminating her. And, the mere fact that FYDA hired someone younger than Campbell as her replacement is not dispositive of whether FYDA discriminated against her based upon age. See, e.g., Heinemann v. Howe & Rusling, 529 F.Supp.2d 396, 414 (W.D.N.Y. 2008).

Further, Campbell's only other evidence or argument even remotely related to age consists solely of her own unsupported assertions that she was terminated because of her age and that other younger employees, such as "Fred Struble, Chris Nestor, Dale Deem, Greg Rice, Frank Jankowski,and Frank Lint," were not terminated for similar conduct. However, a plaintiff's subjective belief that her protected status played a role in an employment decision is not, alone, sufficient to establish an inference of discrimination. See Jones v. United Parcel Service, 214 F.3d 402, 407 (3d Cir. 2000). Campbell has failed to submit any that these "younger" employees engaged in any "similar conduct" for which they were not terminated. Additionally, Campbell has provided no evidence, beyond her own unsupported assertions, to rebut Naman's affidavit stating that FYDA imposes discipline upon employees for

16

using abusive language toward supervisors regardless of the age of the offending employee.

In sum, we find that plaintiff's evidence and arguments regarding her age discrimination claim are too inchoate to withstand defendant's motion for summary judgment. Because she has not established a prima facie case of age discrimination, defendant's motion for summary judgment as to plaintiff's federal and state age discrimination claims will be granted.

## 2. Sex Discrimination

Again, the parties do not dispute that plaintiff satisfies the first three elements of a prima facie case of discrimination based on her sex. FYDA, however, argues that the circumstances of Campbell's termination do not give rise to an inference that her sex was a factor in the decision to fire her. FYDA also argues that Campbell has failed to establish that similarly situated male employees received more favorable treatment.

Plaintiff contends, however, that certain male employees, who directed abusive language at supervisors and/or around customers, were not fired. For example, Campbell testified that she witnessed male employees treat Rice with disrespect, direct profanity at him, and throw paperwork at him without consequence. She also testified that one employee, who would swear

17

continuously, was not fired but was transferred to another position. Again, plaintiff relies primarily on her own conclusions and assertions and offers no other evidence. However, she points to Rice's testimony that, despite a policy against the use of obscene language by employees, it is tolerated in certain settings, such as the shop area. Further, Rice admitted that he verbally warned an employee, whom he did not supervise, who made offensive comments in Rice's presence near customers.[4]

Thus, unlike her age claim, plaintiff has provided at least some evidence, in addition to her own assertions, that could raise an inference that males were treated more favorably and that gender may have been a factor in FYDA's decision to terminate her. Again, plaintiff's initial burden under McDonnell Douglas is not onerous, and drawing all inferences in favor of plaintiff, we find she has set forth a prima facie case of sex discrimination. Accordingly, the burden now shifts to defendant to articulate a legitimate, non-discriminatory reason for terminating plaintiff.

---

[4]     We agree with defendant that these incidents are distinguishable on their facts. For example, Rice clarified that obscene language was tolerated in the shop area because it was away from customers and "no one is going to stop it in that setting." Nevertheless, viewing this evidence in the light most favorable to plaintiff, we find she has met the relatively low hurdle of establishing a prima facie case of sex discrimination. In an abundance of caution, we will perform the remaining analysis under the McDonnell Douglas framework.

18

## B. Defendant's Legitimate Nondiscriminatory Reason

Defendant's burden is also relatively light in articulating a legitimate, nondiscriminatory reason for an adverse employment action. Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997). Here, FYDA contends that it fired Campbell for "gross insubordination" with respect to the incident with Rice. Although plaintiff disputes defendant's contention that she yelled at Rice or that the incident took place in front of customers or other FYDA employees, she admits being "frustrated," using one expletive, and "talking loudly" to Rice. Thus, while Campbell disputes certain details of the incident, she does not dispute that it, in fact, occurred.

Numerous courts routinely have recognized insubordination as a legitimate, nondiscriminatory reason for discharge. See, e.g., Lyles v. Phila Gas Works, 151 F. App'x 169, 171 (3d Cir. 2005); Bisbing v. Lehighton Ambulance Ass'n, Inc., 142 F. App'x 71, 74 (3d Cir. 2005); Moyer v. Kaplan Higher Educ. Corp., 413 F.Supp.2d 522, 527 (E.D.Pa. 2006); Johnson v. Resources for Human Development, 878 F.Supp. 35, 38 (E.D. Pa. 1995). Upon review of the record, we find that FYDA has met its minimal burden of proffering a legitimate non-discriminatory reason for Campbell's termination. Even accepting Campbell's contention that she did not engage in any "conduct worthy of termination," an employer's

19

legitimate reason for discharge need not be a correct or even a well founded one.  Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

Accordingly, because we find defendant has articulated a legitimate nondiscriminatory reason for the termination, the burden shifts back to plaintiff to demonstrate that the proffered reason is a pretext for sex discrimination.

C. Pretext

Once a defendant has articulated a legitimate non-discriminatory reason for its employment action, to defeat summary judgment a plaintiff must produce evidence from which a fact finder could either disbelieve the employer's articulated reason, or believe that a discriminatory reason was more likely than not the cause of the employment action.  Salley v. Circuit City Stores, Inc., 160 F.3d 977, 981 (3d Cir. 1998) (citing Olson v. General Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996)).  Stated differently, "to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a fact-finder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)."  Jane Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 370 (3d Cir. 2008).

20

To discredit the employer's articulated reason for an employment decision, plaintiff cannot simply show that the employer's decision was "wrong or mistaken," since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is "wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765. Rather, the plaintiff must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them 'unworthy of credence.'" Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998). If the court is not satisfied that plaintiff has cast sufficient doubt upon the employer's proffered reasons, summary judgment for defendant is appropriate. Fuentes, 32 F.3d at 762. In this case, we find that Campbell has not cast sufficient doubt upon FYDA's reason for terminating her to survive summary judgment.

Here, Campbell claims that material issues of fact exist such that a reasonable jury could disbelieve that insubordination with respect to the incident with Rice was the real reason that she was fired. Campbell maintains that, although the incident occurred, it happened "behind closed doors." According to Campbell, material issues of fact and questions of credibility preclude summary judgment with respect to the details of the

21

incident, such as, "where, when, how loud, who it was directed to, and if anybody else was present." However, the evidence shows that Campbell's interaction with Rice was a legitimate reason for her discharge.

After the incident occurred, it is undisputed that Rice and Campbell went to see Naman. At this meeting, Naman had only Rice's and Campbell's account of what transpired between them. However, Naman conducted an investigation and received statements from three other FYDA employees who overheard the incident and described Campbell as yelling and using profanity. Although she disputes that anyone witnessed the incident, Campbell does not dispute using at least one expletive, "talking loudly," and being frustrated. Campbell also admits that after the meeting, Naman instructed her to go home and "take some time to cool off."

Regardless of whether the incident occurred "behind closed doors," or within earshot of a customer or FYDA employees, or what specific profanity was used and to whom it was directed, there is no dispute that, as an employer, FYDA could expect a certain level of professionalism and decorum from its employees. An employer has a legitimate interest in maintaining professionalism and respect among employees and their supervisors. The fact that FYDA's account of the incident differs slightly as to location, exact words, or other details is insufficient to cast

22

doubt on its reason for terminating Campbell.

Additionally, the mere fact that Campbell disagrees that her conduct amounted to insubordination is not evidence of pretext. See, e.g., Fatzinger v. Lehigh Valley Hosp., 130 F.Supp.2d 674, 679 (E.D.Pa. 2001) ("[I]t is well-established that neither a simple denial of the charges against her, nor her own rosier perception ... saves Plaintiff from summary judgment.") Likewise, it is not evidence of pretext that defendant's decision may have been wrong or mistaken. See Fuentes, 32 F.3d at 765 (the issue is not whether the employer is wise, shrewd, prudent or competent, but whether the employer acted with a discriminatory motive). As the Court of Appeals for the Third Circuit has explained, the court:

> "do[es] not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the [civil rights laws] do[ ] not interfere. Rather, [the] inquiry is limited to whether the employer gave an honest explanation of its behavior."

Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 332 (3d Cir. 1995).

Simply stated, the issue is not whether FYDA's subjective perception of plaintiff's conduct is objectively accurate. Rather, the issue is whether it was, in fact, this subjective perception, rather than some discriminatory purpose,

23

that actually motivated defendant's action.  Here, the evidence tends to show that FYDA perceived Campbell's conduct as insubordinate, and that this perception (whether objectively accurate or not) actually motivated FYDA's action.  Campbell therefore has not satisfied her burden of establishing pretext. Based on the record here, we find that the evidence does not establish a genuine issue of material fact as to whether FYDA believed Campbell's conduct was insubordinate.

Further, Campbell cannot satisfy her burden to discredit FYDA's legitimate, non-discriminatory reason for her termination with attacks on Rice or Naman's credibility that are not supported by record evidence.  Campbell's admissions regarding her frustration, "talking loudly," using an expletive, and going home to "cool off" sufficiently establish that, even by her own estimation, the incident occurred and was serious.  The uncontradicted evidence shows that Campbell was insubordinate to her supervisor, which is a sufficient legitimate non-discriminatory reason for termination.

Plaintiff next argues that a reasonable jury could disbelieve FYDA's proffered reason and that her sex was more likely than not the reason that she was fired because FYDA treated similarly situated males more favorably.  She argues that genuine issues of material fact exist regarding the treatment of these

24

other male employees.

Campbell relies on her own allegations regarding her observations of male employees treating Rice poorly without consequence and the physical altercation between two employees which did not result in their termination. Upon review of the record before us, we find these incidents in no way involved the same or similar conduct as that exhibited by plaintiff. Although Rice only warned an employee regarding obscene language, Rice did not supervise that employee and told the employee's supervisor about the incident. With respect to the males involved in the physical altercation, FYDA conducted an investigation, as it did regarding Campbell's incident. However, upon investigation, FYDA disciplined these employees but did not terminate them because it determined no supervisor was involved, it occurred away from other employees and customers, and the instigator could not be determined. Plaintiff has offered no testimony or other evidence to dispute the circumstances of the physical altercation or the results of the investigation. There is not sufficient evidence with respect to these incidents to allow a reasonable fact finder to infer that Campbell's insubordination did not motivate her termination.

Next, to rebut defendant's evidence that, prior to firing Campbell, FYDA terminated three male employees for similar

conduct, plaintiff merely attempts to distinguish these employees' conduct as somehow more serious than her own. For example, with respect to Wes Banks, whom FYDA terminated for "gross insubordination and disorderly conduct, using obscene abusive language and threatening supervisor," Campbell contends only that this conduct is "clearly criminal in nature." Next, plaintiff contends that the circumstances of Gerald McClain's termination for using "offensive language towards management" and threatening a lawsuit, "differs greatly" from her termination. Finally, Rich Moore was terminated for violating company policy and being abusive to customers but Campbell argues only that there are "clear differences" from her own conduct because she had an exemplary work history.

Campbell, however, has failed to provide any evidence to distinguish the firing of certain male employees for similar conduct. Even viewing the evidence in her favor, she has failed to demonstrate that similarly situated males were treated differently than her with regard to similar conduct. A review of FYDA's treatment of the male employees in question does not undermine (and in fact supports) FYDA's proffered reason for Campbell's termination. The record is simply devoid of any evidence from which a reasonable fact finder could find that FYDA's reason for terminating Campbell was her gender and not her misconduct.

In sum, Campbell was fired because she was insubordinate to her supervisor. Campbell admits the essential facts surrounding that incident. None of the disputed details regarding the incident could lead a reasonable juror to disbelieve FYDA's asserted reason for firing Campbell. Under these circumstances, FYDA has established that it had a legitimate, non-discriminatory reason for firing her and is entitled to summary judgment.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHEILA A. CAMPBELL )
                                                 )
                Plaintiff,                       )
                                                 )
        v.                                       ) Civil Action No. 07-0245
                                                 )
FYDA FREIGHTLINER PITTSBURGH, INC.,              )
                                                 )
                Defendant.                       )

ORDER

AND NOW, this $\underline{12}$ day of August, 2008, upon consideration
of defendant's motion for summary judgment [Doc. No. 21], IT IS
HEREBY ORDERED that the motion is GRANTED. Defendant's motion to
strike [Doc. No. 44] is DENIED. The Clerk of Court is directed to
mark this case closed.

BY THE COURT:

cc:     All Counsel of Record